# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION NO. 07-2186 |
| VERSUS | * | JUDGE JAMES |
| LARRY WAYNE GIVENS and KIMBERLEY OLIVO GIVENS | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for judgment of default [doc. # 12] filed by plaintiff, the United States of America. For reasons assigned below, it is recommended that plaintiff's motion [doc. # 12] be **GRANTED IN PART and DENIED IN PART**.

## Procedural History

On December 19, 2007, the United States of America filed the instant complaint against defendants, Larry Wayne Givens and Kimberly Olivo Givens to enforce its rights as holder in due course of eight promissory notes ("the Notes") executed by defendants and made payable to the order of the United States of America, acting through the Farmers Home Administration ("FmHA").[1] (Compl.). The United States asserts that defendants defaulted on the Notes, and therefore the government exercised its right to accelerate the maturity of the unpaid principal and interest. *Id*. To satisfy the outstanding balance, the United States seeks an in rem judgment ordering the seizure and sale of certain movable and immovable property that defendants pledged

---

[1] FmHA is now known as the Farm Service Agency.

or mortgaged as security for the Notes. *Id*.

On June 24, 2008, six months after suit was filed, a deputy U.S. Marshal filed returns of service indicating that on June 9, 2009, he personally served both defendants by handing the summonses and complaint to defendant, Larry Wayne Givens, at the U.S. Marshal's office. [*See*, doc. #s 3-4]. Accordingly, defendants' responsive pleadings ostensibly were due within 20 days thereafter. Fed.R.Civ.P. 12(a); *but see*, discussion, *infra*. Another six months later, however, no responsive pleadings had been filed by, or default entered against, defendants; thus, the Clerk of Court notified plaintiff that he intended to dismiss the suit for failure to prosecute. [doc. # 5]. In response, the United States requested an entry of default against defendants, which the Clerk duly entered on January 21, 2009. [doc. # 7].

Eight days later, on January 29, 2009, attorney, Leo Miller, filed an "Answer and Defense" on behalf of both defendants. [doc. # 8]. That same day, the Clerk of Court issued defendants a Notice of Deficient Document on the grounds that default had already been entered against them, and that the only permissible pleading was a motion to set aside the default. [doc. # 9]. The Clerk of Court afforded defendants ten days to remedy the deficiency or cautioned that the court may strike the document. *Id*. Defendants failed to file a motion to set aside the entry of default or to otherwise respond to the Clerk's Notice. Accordingly, on February 26, 2009, the court struck defendants' answer. (February 26, 2009, Order [doc. # 10]).

On March 11, 2009, the United States filed the instant motion for a default judgment against defendants, Larry Wayne Givens and Kimberly Olivo Givens. [doc.# 12]). The district court referred the motion to the undersigned. (March 25, 2009, Electronic Order [doc. # 14]). The briefing delays have now lapsed and defendants have not filed a response. Accordingly, the

motion is unopposed. (Notice of Motion Setting [doc. # 15]). The matter is now before the court.

### Discussion

**a) Personal and/or In Rem Jurisdiction**

A default judgment is a drastic, disfavored remedy that a court should employ only in an extreme situation. *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation omitted). One such circumstance warranting default is when the adversary process has been halted by an essentially non-responsive party. *Id*. Before suffering a default judgment, however, a defendant is entitled to an opportunity to present a defense. *Id*. A defendant's duty to defend a suit does not arise until "[s]he has been served with process and properly brought before the court." *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 282 (5th Cir. 1987). If a defendant is improperly served and the district court thereby fails to acquire in personam jurisdiction, then a subsequent default judgment is void. *Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999).

In the case *sub judice*, it appears that the United States failed to properly serve defendant Kimberly Olivo Givens. The return of service indicates that the deputy marshal "served" Kimberly Givens by handing her summons and copy of the complaint to her husband and co-defendant, Larry Givens at the office of the U.S. Marshal. (Return of Service [doc. #3]). However, this purported means of service does not appear to comply with Federal Rule of Civil Procedure 4(e).

It could be argued that because the United States is seeking solely a judgment in rem, it intended the court to exercise in rem jurisdiction. Indeed, "[i]f jurisdiction is based on the court's

power over property within its territory, the action is called 'in rem' or 'quasi in rem.' The effect of a judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner, since [s]he is not before the court." *Shaffer v. Heitner*, 433 U.S. 186, 199, 97 S.Ct. 2569, 2577 (1977). Because a quasi in rem action is a proceeding against property, jurisdiction is perfected by service of process on the res. *Submersible Systems, Inc. v. Perforadora Cent., S.A. de C.V.*, 2001 WL 849726 (5th Cir. 2001) (unpubl.) (citations omitted). However, the district court does not acquire jurisdiction if the res is not properly served with process. *Id*. Historically, "[j]urisdiction of the res is obtained by a seizure under process of the court, whereby it is held to abide such order as the court may make concerning it." *Cooper v. Reynolds*, 77 U.S. 308, 1870 WL 12736 (1870). To date, there is no evidence that the United States has seized the movable and immovable property at issue.[2]

The current federal rules authorize the courts to exercise in rem jurisdiction over property or assets when either 1) a federal statute so provides and notice is provided to claimants as provided by the statute or by summons; or 2) if state law so permits and the court cannot otherwise obtain personal jurisdiction over the defendant in the district. Fed.R.Civ.P. 4(n).[3] There is no indication that the foregoing circumstances are satisfied here.

Despite the apparent improper service upon defendant, Kimberly Givens, the undersigned nevertheless finds that the court still enjoys jurisdiction to render judgment in this matter. First, there is no question that one of the defendants and co-owners of the subject property was

---

[2] Albeit, the judgment in rem sought by the government will result in the seizure and sale of the relevant property. However, it is not clear that the post-judgment seizure of the property will retroactively confer jurisdiction upon the judgment itself.

[3] *See also*, 28 U.S.C. § 1655.

4

properly served. Moreover, defendants herein are husband and wife. (Compl., ¶ 2). To the extent that Louisiana law is relevant, there is a presumption that things possessed by a spouse during a "regime of community of acquets and gains" is community property. La. Civ. Code Art. 2340. Louisiana law further provides that "[e]ither spouse is the proper defendant, during the existence of the marital community, in an action to enforce an obligation against community property . . ." La. Code Civ. Pro. Art. 735. Although Louisiana courts prefer that both spouses be made parties to a suit to enforce an obligation against community property, they have found no error where the spouses reside together and one spouse is properly served. *See, Gewalt v. Stevens*, 757 So.2d 705, 708-709 (La. App. 1st Cir. 1999); *Shel-Boze, Inc. v. Melton*, 509 So.2d 106, 109 (La. App. 1st Cir.1987); *French Market Homestead, FSA v. Huddleston*, 579 So.2d 1079, 1082 (La. App. 5th Cir. 1991); and *Singh v. Singh*, 496 So.2d 506, 508 (La. App. 1st Cir.1986).

In addition, personal jurisdiction attaches not only via service of process, but also when a party voluntarily appears in the matter. *Cooper, supra*. A party waives her right to object to personal jurisdiction when she fails to assert the objection in her first pleading or general appearance. *Jackson v. FIE Corp.*, 302 F.3d 515, 523 (5th Cir. 2002) (citing Fed.R.Civ.P. 12(h)). Moreover, a party need not actually file an answer in the suit to make an appearance for purposes of Rule 12(h). *Broadcast Music, Inc., supra*. Rather, counsel's involvement in the litigation on behalf of a party may constitute an appearance which waives any defect pertaining to personal jurisdiction. *Id*.

In the case *sub judice*, attorney Leo Miller filed an answer on behalf of both defendants which did not challenge the sufficiency of the service of process. [doc. # 8]. Although the court

5

subsequently struck the pleading, Miller has remained counsel of record for defendants, and has continued to receive notice of all proceedings in this matter via the court's electronic case filing system.[4] Despite Miller's continued representation of defendants, he has not challenged the sufficiency of process or otherwise employed any remedial efforts to defend the matter. As the Fifth Circuit remarked, a defendant may not "halfway appear in a case" implying that she was properly served, all the while biding her time before pulling "failure of service out of the hat like a rabbit in order to escape default judgment." *Broadcast Music, Inc., supra*.

In short, even if the United States failed to properly serve Kimberly Givens, counsel voluntarily appeared in this case on her behalf, and thereby waived the defense of insufficiency or failure of service of process. *Id*. Accordingly, the court enjoys requisite personal jurisdiction to adjudicate this matter.

**b) Default Judgment**

The Clerk of Court is required to enter default against a party when he or she has failed to plead or otherwise defend the matter. Fed.R.Civ.P. 55(a). At the time the Clerk entered default in this matter, defendants had not yet made an appearance. Although defendants subsequently filed a deficient answer that was stricken by the court, they have since failed to file a motion to set aside the entry of default or to otherwise defend the matter, despite notice and opportunity to do so.

Following the entry of default, and when, as here, the defendants have appeared in the

---

[4] *See*, the Notices of Electronic Filing associated with docket entries 8-15.

matter,[5] the plaintiff may petition the court for a default judgment following written notice served upon the defendant or her representative three days before the hearing. Fed.R.Civ.P. 55(b)(2).[6] A defendant's default, however, does not automatically warrant the entry of a default judgment. *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200 (5th Cir. 1975). The defendant, by his or her default, admits solely the well-pleaded allegations of fact within plaintiff's petition. *Id*. (citation omitted). "[A] default judgment may be lawfully entered only 'according to what is proper to be decreed upon the statements of the bill, assumed to be true,' . . . " *Id*. (quoting *Thomson v. Wooster*, 114 U.S. 104, 113, 5 S.Ct. 788, 792 (1885)). Moreover, "[c]onduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992).

For purposes of a default judgment, plaintiff's well-pleaded factual allegations are taken as true -- except regarding damages. *U.S. For Use of M-CO Const., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citation omitted). In lieu of a hearing on damages, the court may award the appropriate remedy by relying upon detailed affidavits, documentary evidence, and its personal knowledge of the record to award damages. *See, James v. Frame*, 6 F.3d 307 (5th Cir. 1993) (citations omitted); *see also, Wilson v. Ameristar Casino Vicksburg, Inc.*, 2008 WL 4296563 (W.D. La. Sept. 19, 2008).

---

[5] *See, Sun Bank of Ocala, supra* (a motion to dismiss that the Clerk refused to accept constituted an appearance sufficient to trigger the protections of Rule 55(b)(2)); *U.S. on Behalf of and for Use of Time Equipment Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993) (stricken answer constituted appearance for Rule 55(b)(2) purposes).

[6] Here, defendants' attorney received timely, written notice of the government's motion to confirm default judgment via the court's electronic notice system. *See*, LR 5.7.09W; Fed.R.Civ.P. 5(b)(3).

**c) FmHA Foreclosure**

"Under a nationwide federal loan program like that of [the] FmHA, it is settled that federal law ultimately controls the government's rights and responsibilities." *Farmers Home Admin. v. Muirhead*, 42 F.3d 964, 965 (5th Cir.1995) (citing *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979)). "To recover on a promissory note, the government must show [that] (1) the defendant signed [the note], (2) the government is the present owner or holder [of the note], and (3) the note is in default." *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (citation omitted). A party establishes a valid cause of action on a promissory note when it alleges that it is the holder and owner of the note and that the note is in default. *See American Bank v. Saxena*, 553 So.2d 836, 842 (La. 1989).

**d) Facts Deemed Admitted by Complaint and Attached Affidavit**

The following facts set forth in the complaint and supporting affidavit are deemed admitted by defendants' default:

Beginning in March 1996, to obtain certain Farmer Program Loans, Larry Wayne Givens and Kimberly Olivo Givens, husband and wife, executed eight promissory notes payable to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture:

| **LOAN CODE** | **DATE** | **PRINCIPAL AMOUNT** | **INTEREST RATE** | **EXH.** |
|---|---|---|---|---|
| Initial | 03/07/1996 | $ 99,500.00 | 6.00 % | 1A |
| Rescheduled[7] | 04/25/1997 | $ 23,332.99 | 6.00 % | 1A |
| Resch. | 02/10/1998 | $ 24,449.14 | 5.00 % | 1A |
| Resch. (44-25) | 08/14/2002 | $ 24,864.15 | 4.75 % | 1A |

---

[7] Hereinafter abbreviated to "Resch."

| | | | | |
|---|---|---|---|---|
| Subsequent | 04/22/1996 | $ 8,810.00 | 6.00 % | 2A |
| Resch. | 04/25/1997 | $ 9,342.95 | 6.00 % | 2A |
| Resch. | 02/10/1998 | $ 9,789.88 | 5.00 % | 2A |
| Resch. (44-28) | 08/14/2002 | $ 8,968.17 | 4.75 % | 2A |
| Subsequent | 04/25/1997 | $ 99,000.00 | 6.50 % | 3A |
| Resch. | 02/10/1998 | $ 26,801.75 | 5.00 % | 3A |
| Resch. (44-23) | 08/14/2002 | $ 27,256.00 | 4.75 % | 3A |
| Initial | 06/11/1999 | $ 87,010.00 | 3.75 % | 4A |
| Resch. (43-24) | 08/14/2002 | $ 81,303.96 | 3.75 % | 4A |
| Subsequent | 02/11/2000 | $ 15,000.00 | 6.25 % | 5A |
| Resch. (44-22) | 08/14/2002 | $ 17,023.16 | 4.75 % | 5A |
| | 03/08/2001 | $ 30,000.00 | 5.50 % | 6A |
| Resch. (44-26) | 08/14/2002 | $ 32,318.13 | 4.75 % | 6A |
| Subsequent | 03/08/2001 | $ 65,100.00 | 5.50 % | 7A |
| Resch. (44-21) | 08/14/2002 | $ 70,240.23 | 4.75 % | 7A |
| Initial | 03/21/2001 | $114,200.00 | 6.00 % | 8A |
| Reamortized (41-27) | 08/14/2002 | $123,792.80 | 6.00 % | 8A |

(collectively "the Notes") Compl., ¶ 2, Affidavit of Willie Cooper, Compl. Exh. 1F.

The United States via the FmHA is the current owner and holder of the Notes. *Id*.

In order to secure payment of the Notes, defendant executed in authentic form, certain Real Estate Mortgages for Louisiana, which are filed in the official records of Franklin Parish, Louisiana:

| DATE OF INSTRUMENT | REGISTRY NUMBER | MORTGAGE BOOK |
|---|---|---|
| 03/21/2001 | 299996 | 287 |
| 08/14/2002 | 306209 | 301 |

("the Mortgages") (Compl. Exhs. 1B-2B).

As further security for the Notes, defendants executed a March 8, 2001, Security Agreement (Chattels and Crops) in favor of plaintiff. (*See*, Compl., ¶ 3; Exh. 1E).

The mortgages and security agreement expressly authorize the holder to foreclose upon, or sell the property in the case of default. (Compl., Exhs. 1B, 2B, 1E).

To protect the security property, the following costs were advanced to defendants,

| DATE | AMOUNT | PURPOSE |
|---|---|---|
| 06/18/2007 | $ 60.00 | UCC Certificate |
| 02/08/2006 | $ 1,400.00 | Appraisal |
| 04/10/2006 | $ 300.00 | Title Opinion |
| 04/13/2004 | $ 20.00 | Continuation |

(Compl., ¶ 3, Affidavit of Willie Cooper, Exh. 1F).

Defendants failed to pay the principal and interest on the Notes as they became due. (Compl., Affidavit of Willie Cooper, Exh. 1F). Thus, on May 9, 2007, the United States exercised its option to accelerate the maturity of the unpaid principal and interest on the Notes. *Id*. However, defendants failed to pay the amount demanded, and as of July 2, 2007, were in default of the Notes and mortgages above. *Id*.

As of June 26, 2007, defendants owed the following unpaid balances on the Notes,

| Loan Code | Unpaid Principal | Unpaid Interest | Daily Accrual |
|---|---|---|---|
| 44-21 | $ 70,240.23 | $ 16,234.15 | $ 9.1409 |
| 44-22 | $ 17,023.16 | $ 3,934.45 | $ 2.2153 |
| 44-23 | $ 27,256.00 | $ 6,299.49 | $ 3.5470 |
| 44-24 | $ 81,303.96 | $ 14,835.20 | $ 8.3531 |
| 44-25 | $ 24,864.15 | $ 5,746.69 | $ 3.2357 |
| 44-26 | $ 32,318.13 | $ 7,469.47 | $ 4.2058 |
| 41-27 | $124,332.80 | $ 36,178.14 | $ 20.4383 |
| 44-28 | $ 8,968.17 | $ 2,072.76 | $ 1.1671 |

for a total unpaid principal of $ 386,306.60,[8] a total unpaid interest of $ 92,770.35,[9] which together equal an unpaid balance of $ 479,076.95, plus additional interest on the principal continuing to accrue at a daily rate of $ 52.3032.[10] (Compl., ¶ 5; Affidavit of Willie Cooper, Exh. 1F). As of today's date, the total, unpaid, accelerated balance on the Notes (including total unpaid principal and accrued interest) equals $ 513,230.93.[11] Pre-judgment interest continues to accrue at the daily rate until date of judgment.

---

[8] In the complaint and proposed default judgment, the United States represented that as of June 26, 2007, the unpaid principal totaled $ 388,086.60. (*See*, Compl, ¶ 5). However, the sum of the unpaid principal for the Notes actually totals $ 386,306.60, as of June 26, 2007. The additional $ 1,700.00 ($ 388,086.60 - $ 386,306.60) tacked on by the government likely represents the costs advanced to defendants which is claimed separately by the government.

[9] In the complaint and proposed default judgment, the United States represented that unpaid interest as of June 26, 2007, totaled $ 92,906.11. (*See*, Compl, ¶ 5). However, when adding the unpaid interest for the Notes in question, the undersigned obtained a sum of $92,770.35. The complaint and affidavit do not readily support the additional $ 135.76 in unpaid interest claimed by the United States as of June 26, 2007. Accordingly, the court will employ the lower figure – the maximum sum that is supported by the record.

[10] In the complaint and proposed default judgment, the United States represented that after June 26, 2007, interest accrued at a daily rate of $ 52.6047. (*See*, Compl, ¶ 5). According to the court's calculations, however, the sum of the daily accrual rates for the Notes equals $52.3032. Accordingly, the court will employ the lower daily rate – the maximum sum that is supported by the record.
    The United States also seeks additional interest accruing at an annual rate of $ 3.75 %, 4.75 % and 6.00 %. However, the daily interest accrual rate already includes interest on the unpaid principal at those annual percentage rates. Unless the United States can establish authority for an award of additional, annualized interest on top of the daily interest, it appears to represent a double recovery that is not facially supported by the record.

[11] Unpaid principal ($ 386,306.60), plus unpaid interest through June 26, 2007 ($92,770.35), plus daily interest accrued since June 26, 2007 ($ 34,153.99 [653 days x $52.3032]).

11

**e) Conclusion**

The FmHA has established the elements of its claim for judgment on the notes and mortgages based on the undisputed facts in this case.

For the reasons set forth above,

**IT IS RECOMMENDED** that the motion for a default judgment [doc. # 12] filed by plaintiff, United States of America, be **GRANTED IN PART and DENIED IN PART**, and that judgment in rem be entered as follows,

**IT IS ORDERED, ADJUDGED AND DECREED** that there be judgment in rem in favor of Plaintiff, **UNITED STATES OF AMERICA,** and against Defendants, **LARRY WAYNE GIVENS and KIMBERLY OLIVO GIVENS,** for the balance of unpaid notes and accrued interest totaling $ 513,230.93, as of April 9, 2009.[12] Costs advanced to defendants to protect the secured property are recognized in the total amount of $ 1,780.00. Post-judgment interest is awarded from the date of judgment until payment. 28 U.S.C. § 1961.[13]

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the foregoing sums presently due to the United States of America are secured by certain Real Estate Mortgages For Louisiana, liens and privileges, as described below,

<u>**IMMOVABLE PROPERTY**</u>

**<u>TRACT 1:</u>**

---

[12] This figure includes accrued interest at the daily rate through April 9, 2009. Additional interest accruing at the $ 52.3032 daily rate should be included through the date of judgment.

[13] The post-judgment rate equals the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment. *Id*.

The Northwest Quarter of the Northwest Quarter(NW/4 of NW/4); the Southwest Quarter of the Northwest Quarter (SW/4 of NW/4); the North One-half of the Southwest Quarter (N/2 of SW/4), Section 20, Township 13 North, Range 8 East, Franklin Parish, Louisiana, **LESS AND EXCEPT** the Northwest Quarter of the Northwest Quarter of the Northwest Quarter (NW/4 of NW/4 of NW/4), Section 20, Township 13 North, Range 8 East, Franklin Parish, Louisiana.

Together with all buildings and improvements situated thereon, all rights, way and privileges thereunto belonging.

**SUBJECT TO:**

Right-of-Way to Louisiana Department of Highways, dated April 29, 1969, recorded in Conveyance Book 149, Page 400, records of Franklin Parish, Louisiana.

Right-of-Way to Louisiana Power & Light Co., dated June 20, 1969, recorded in Conveyance Book 150, Page 88, records of Franklin Parish, Louisiana.

Right-of-Way to Franklin Parish Police Jury, dated August 4, 1969, recorded in Conveyance Book 150, Page 127, records of Franklin Parish, Louisiana.

Right-of-Way to Louisiana Power & Light Co., dated July 15, 1969, recorded in Conveyance Book 151, Page 268, records of Franklin Parish, Louisiana.

Right-of-Way to Louisiana Power & Light Co., dated October 12, 1972, recorded in Conveyance Book 167, Page 7, records of Franklin Parish, Louisiana.

**TRACT 2:**

A certain tract of land located in the Northwest Quarter of the Southwest Quarter (NW/4 of SW/4), Section 4, Township 12 North, Range 7 East, Franklin Parish, Louisiana, more particularly described as follows, to-wit:

Commence at the Southwest corner of the Northwest Quarter of the Southwest Quarter (SW/c of NW/4 of SW/4), Section 4, T12N-R7E, and run in an Easterly direction along the South line of the Northwest Quarter of the Southwest Quarter (NW/4 of SW/4) of

said Section 4, a distance of 441 feet to a 3/8" iron rod; thence turn a left deflection angle of 81 degrees, 32 minutes and run in a Northerly direction, a distance of 205.45 feet to a 3/8" iron rod; thence turn a left deflection angle of 98 degrees, 28 minutes and run in a Westerly direction parallel with the South line of the Northwest Quarter of the Southwest Quarter (NW/4 of SW/4), a distance of 461.80 feet to the West line of said Northwest Quarter of Southwest Quarter (NW/4 of SW/4); thence run in a Southerly direction along the West line of said Northwest Quarter of Southwest Quarter (NW/4 of SW/4), a distance of 203.2 feet back to the POINT OF BEGINNING, containing 2.06 acres, more or less.

Together with all buildings and improvements situated thereon, all rights, ways and privileges thereunto belonging.

## **MOVABLE PROPERTY**

One (1) Pivot Irrigation System

One (1) 8" Submersible Pump

One (1) 4045T John Deere Power Unit, S.N. 17446

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the above-described property be seized and sold by the United States Marshal for the Western District of Louisiana, at public auction, <u>without appraisement</u>, for cash, to the highest bidder, and that the proceeds of said sale be deposited in the Registry of the Court and the prior lien holders, Winnsboro State Bank and Hibernia Bank, be paid by preference and priority over all other persons whomsoever, the amount of the claim with interest; next, Plaintiff will be paid the remaining balance. **That the amount realized from said sale be recognized as full satisfaction of the Judgment herein. Plaintiff shall have no right to proceed against Defendants for any deficiency Judgment.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that all-assessable court costs are awarded in favor of plaintiff.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 9th day of April 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE